UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:23-cr-10256-IT |
| | ) | |
| | ) | |
| ROYAL BENJAMIN | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

At 64, Royal Benjamin has spent far too much of his life behind bars. He has not yet been able to fully interrupt the cycle of addiction and crime that has again led him back to stand before a sentencing court. Because he recognizes that the harm he has caused calls for a significant period of incarceration even at his age, he now recommends a sentence of five years in prison with the maximum three years of supervised release. This is a modest downward variance from the advisory range of 70-87 months. Although incarceration is justified here, the even more important response, both for rehabilitation and protection of the public, is the requirement that Mr. Benjamin participate in substance abuse treatment while on supervised release. He also requests a judicial recommendation to the Bureau of Prisons (BOP) Residential Drug Abuse Program (RDAP), even though he is fully aware that he will not be entitled to any sentence reduction upon completion. For the reasons addressed below, a combination of five years in prison and three years supervised release with the required treatment is a sentence that is "sufficient, but not greater than necessary" to accomplish all the goals of sentencing. 18 U.S.C. § 3553(a).

I.     **The root cause of Royal Benjamin's offending is a decades-long addiction to crack cocaine that ultimately requires consistent, supervised treatment for him to be able to make change.**

Royal Benjamin was born in Mobile, Alabama in 1960. PSR ¶ 56. After his parents separated when he was six, his mother moved to Roxbury and thereafter he split his time between there and Mobile. Id. His family was poor, but fortunately they never lacked any essentials. Id.

Growing up in Roxbury in the 1980s, Royal was exposed to drugs and crime at an early age. PSR ¶ 57. He acknowledges that his environment and his peers influenced him towards negative behavior beginning in his teens. Id. His first contact with the criminal justice system occurred when he was 15. PSR ¶ 50. He started using both alcohol and marijuana when he was 16. PSR ¶¶ 65, 66. His substance use and criminal involvement interfered with his education, and he dropped out of school in the 10th grade. PSR ¶ 70. This likely would have been in approximately 1975, the very beginning of the Boston busing crisis, when white adults in South Boston used violence and intimidation to keep black children like Royal Benjamin from attending school there. Unfortunately he never obtained his GED. Id. He received his first conviction and prison sentence when he was just 18, 46 years ago in 1978. PSR ¶ 37.

Mr. Benjamin's drug use escalated rapidly during the crack epidemic of the 1980s. He first started using powder cocaine when he was 21 and later transitioned to crack. PSR ¶ 67. Since the 1990s, his addiction has been to crack cocaine and it in turn has driven his offending, including in this case. Id.

Despite Royal Benjamin's long criminal history driven by addiction, he has had very little substance abuse treatment. PSR ¶ 68. For example, he was not required by the Massachusetts

state court to undergo substance abuse treatment upon release from the most recent conviction before his arrest in this case on March 27, 2023. That prior sentence was 10-12 years in state prison for unarmed robbery. PSR ¶ 44. Such a sentence in Massachusetts state court means that the defendant is eligible for parole after 10 years but that the sentence expires fully after 12 years. Both the parole eligibility and expiration dates are subject to reduction through earned good time. In that case, Mr. Benjamin served approximately 10.5 years, from June 2009 until December 2019. Id. That length of sentence suggests that he was not granted parole but simply released when the sentence expired due to good time reductions. The sentence did not include a period of probation, as Massachusetts law does not allow for both incarceration and probation to be imposed on a single count, other than a suspended or split sentence to the House of Corrections. That means that when Royal Benjamin was released in December 2019, it was directly back into the community without any services or treatment after 10.5 years of incarceration.

To his credit, Royal Benjamin did in fact succeed for several years after his 2019 release despite the lack of support or supervision from the Court. He went three years before committing another crime. This extended period contrasts significantly with previous releases after which he returned to offending within months. See PSR ¶¶ 41-44 (release 5/27/93, new offense 9/8/94, release 7/11/2000, new offense 9/25/2000, release 5/22/09, new offense 6/17/09). However, during the three years after his December 2019 release he not only did not reoffend but was employed at several different locations. PSR ¶¶ 71, 72. He worked for over a year as a Personal Care Assistant and then for several months each at a Chipotle and Hilton Garden Inn. Id. These may be modest positions for some people, but for Royal Benjamin they show real effort given

that his history of incarcerations had prevented him from establishing any kind of prior work history. His employment and compliance with the law for three years shows that Mr. Benjamin was also maintaining his sobriety. These are all remarkable achievements in light of the fact that he never had achieved this type of success before and he was doing it without proper treatment or supervision from the Court.

Ultimately, however, he did not maintain his sobriety, likely because he was doing it on his own without a support network. When he began using crack cocaine again in late 2022 or early 2023, he returned to crime to fund his addiction.

This cycle need not be repeated when Mr. Benjamin is eventually released from the sentence the Court imposes in this case. There will be two important ways his release will be different than it was in 2019. The first is that he will have the benefit of the knowledge that he can in fact stay sober, maintain employment, and follow the law for an extended period. Before 2019, he did not have the benefit of having had such prior success. The second difference is that he will be subject to supervision that will require him to continue with substance abuse treatment and will monitor him for signs of relapse. In addition to substance abuse treatment, Mr. Benjamin also agrees with probation's proposed special condition #4, which would require him to participate in a vocational services training program. PSR p. 23. The probation department will also have the ability to refer Mr. Benjamin to numerous other services should they become necessary, including mental health treatment and employment or housing assistance.

Royal Benjamin will also have the benefit of the support of his sister Patricia and longtime friend Michelle Brown. Both have written thoughtful letters to the Court on Mr. Benjamin's behalf. Exhibit One, Letters of Support for Royal Benjamin. They both acknowledge the harm he

4

has caused and how his addiction has driven his offending. Id. They write of his expressions of remorse and his need for help. Id. Both understand that he will need to serve another period of incarceration and reenter society again. Id. Both will be there to assist him in conjunction with the supervision of the probation department.

Mr. Benjamin will be approximately 70 years old when released. His advanced age, the lessons of his past success, the supervision of probation, and the support of his loved ones will all put him in the best position to finally end the cycle of addiction and offending for good. These factors, all part of the history and characteristics of the defendant, support a modest downward variance to a sentence of 60 months. 18 U.S.C. § 3553(a).

## II.   A sentence of incarceration moderately below the advisory guidelines will accomplish the goals of sentencing.

The defense agrees that the probation department has calculated the guidelines correctly. The robbery base offense level of 20 receives an appropriately significant six-point increase because a firearm was "otherwise used." PSR ¶¶ 25, 26; USSG § 2B3.1(b)(2)(B). Three points are then subtracted because Mr. Benjamin has accepted responsibility, resulting in a total offense level of 23. PSR ¶¶ 32-34. The defense agrees that Mr. Benjamin's prior convictions place him in Criminal History Category IV, where offense level 23 yields an advisory range of 70-87 months. PSR ¶¶ 46, 47, 77.

The Sentencing Commission's Judiciary Sentencing Information (JSIN) database provides additional data points for the Court's consideration. The JSIN data tells us that during the last five years, 56 robbery defendants with the same offense level and Criminal History Category,

and thus the same advisory range, were sentenced in federal district courts. PSR ¶ 91. The average sentence for those defendants was 69 months, one month below the low end of the range. Id. Mr. Benjamin's recommendation of 60 months thus would be nine months below the average sentence for similarly situated defendants.

At 64, Mr. Benjamin is likely much older than the great majority of the 56 defendants captured in the JSIN data. His advanced age is relevant because age has been found to be a consistent predictor of recidivism. In 2021 the Sentencing Commission published a report of the findings of an eight-year study of the recidivism of offenders released from federal prisons in 2010. U.S. SENT'G COMM'N, *"Recidivism of Federal Offenders Released in 2010," 2021* (*"Recidivism 2021"*) available at  www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf. The study looked at recidivism of over 32,000 offenders, which was the largest study group within an eight-year period looked at by the Commission to date. *Recidivism 2021* at 3.

The Commission found that rearrest rates were highest for offenders younger than 21 at release date and declined consistently for older age groups. *Recidivism 2021* at 24, 25, Fig. 12. The oldest group considered by the Commission was for offenders who were 60 or older at the time of release. Id. The rearrest rate for that group was only 15.9%, by far the lowest of any group. Indeed, it was approximately half the rate of the group with the second-lowest rate, as offenders from age 50-59 had a rearrest rate of 30.8%. Id. Should the Court impose the requested 60-month sentence, Mr. Benjamin would be at the upper end of the age group with the lowest rearrest rate, suggesting that his advanced age presents a rearrest rate even lower than 15.9%.

6

These findings, based on an enormous sample size, provide empirical support for the modest downward variance requested by the defense.

**III.**   <u>**Conclusion**</u>

Royal Benjamin harmed others and both the nature and circumstances of the offense and his history and characteristics call for a serious sentence. For a 64-year-old man whose first period of extended sobriety and employment came in his early sixties, a five-year sentence now is a serious sentence. It will keep him incarcerated until his late 60s, an age at which he demonstrably presents a greatly reduced risk of recidivism. The requested three years of supervised release with appropriate conditions will keep him under the Court's monitoring into his 70s. For all of these reasons, a sentence of 60 months and three years supervised release is one that is "*minimally* sufficient to achieve the broad goals of sentencing."  *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added).

Respectfully submitted,
ROYAL BENJAMIN
by his attorney

<u>*Joshua Hanye*</u>
Joshua Hanye, BBO#661686
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061

**<u>Certificate of Service</u>**

      I, Joshua R. Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date: <u>November 6, 2024</u>                 */s/ Joshua R. Hanye*
                                                 Joshua R. Hanye